### HARVEY BLACKWELL V. THE STATE.

*No. 3378.   Decided February 27.*

1.   **Riot—Indictment for.**—An indictment or information for riot must show for what purpose the rioters assembled, that the court may judge whether it was lawful or not, and it must state that the defendants unlawfully assembled.   It must likewise state the illegal act which was the object of the meeting; for a riot is a compound offense—there must not only be an unlawful act to be done, but an unlawful assembly of more than two persons.

2.   **Same.**—See an information held fatally defective because it did not allege that the parties did "unlawfully assemble together," or that having lawfully assembled together they afterward joined in the commission of an unlawful act which they proceeded to do or commit.

3.   **Same.**—See opinion for a discuss⸱    *extenso* of the allegations essential to the validity of an indictment for riot.

APPEAL from the County Court of Waller.   Tried below before Hon. A. G. Lipscomb, County Judge.

Appellant was convicted under an information attempting to charge him with riot, and was punished by a fine of $300 assessed against him. It is unnecessary to state the facts in the case.

*Reese & Tompkins,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State, confessed error upon the insufficiency and invalidity of the indictment.   (See opinion for copy of charging part of the indictment.)

WHITE, PRESIDING JUDGE.—Appellant was indicted for and convicted of a riot, under article 295 of the Penal Code, which reads: "If the persons unlawfully assembled together do, or attempt to do, any illegal act, all those engaged in such illegal act are guilty of riot." And article 305 of the Penal Code provides, that "If any person, by engaging in a riot, shall disturb the inmates of any residence by loud and unusual or unseemly noises, or by the discharge of firearms in the immediate vicinity of such residence, he shall be punished by a fine of

not less than $50 nor more than $500. A residence may be either a public or a private house." Article 308 provides, that "A person engaged in any riot, whereby an illegal act is committed, shall be deemed guilty of the offense of riot, according to the character and degree of such offense, whether the said illegal act was in fact perpetrated by him, or by those with whom he was participating." Article 309 of the Penal Code provides: "Where the assembly was at first lawful, and the persons so assembled afterward agreed to join in the commission of an act which would amount to riot if it had been the original purpose of the meeting, all those who do not retire when the change of purpose is known are guilty of riot." Article 311 of the Penal Code reads: "The indictment or information must likewise state the illegal act which was the object of the meeting, or which they proceeded to do, if the assembly was originally lawful."

The information in this case charges (omitting the formal parts), that "On the 25th day of May, 1891, in the county of Waller and State of Texas, one Harvey Blackwell * * * did then and there unlawfully engage in a riot with one Fenton Moore, Isaac Huff, Tom Huff, Alfred Eckles, and various other persons, who had assembled at the residence of L. D. Thompson; and he, the said Harvey Blackwell, did then and there, acting together with said Fenton Moore, Isaac Huff, Tom Huff, and Alfred Eckles, and various other persons, disturb the inmates of said L. D. Thompson's residence by the discharge of firearms in the immediate vicinity of the said L. D. Thompson's residence, * * * against the peace and dignity of the State."

Defendant moved in arrest of judgment, because the information upon which he was tried did not charge an offense known to the penal laws of the State of Texas, because the information did not charge the offense in plain and intelligible words, and because, in charging that defendant "did unlawfully engage in a riot," the information states a legal conclusion only.

Our statute (article 279, Penal Code) provides: "An unlawful assembly is the meeting of two or more persons with intent to aid each other, by violence or by any other manner, either to commit an offense, or illegally to deprive any person of any right, or to disturb him in the enjoyment thereof." As we have seen above, in article 295, if any persons unlawfully assemble together to do or attempt to do any illegal act, all those engaged in such illegal act are guilty of riot.

In his invaluable work on Criminal Forms, Judge Willson has provided us with no form of an indictment or information for riot; but he says at page 192, section 197: "It is deemed unnecessary to give forms for indictments for this offense. The pleader will first allege the unlawful assembly and the purpose thereof, according to the proper form, and then proceed to allege that the parties did do, or attempted to do, the acts which they assembled together to do."

Mr. Bishop, discussing the form of an indictment for riot, says: "To constitute this offense there must be (1) an assemblage (2) consisting of three or more persons, and (3) a disorderly act performed by them, of a sort calculated to terrify others. The allegations may be that at a time and place the defendants (naming them), 'together with divers other evil-disposed persons, to the number of ten and more, to the jurors unknown,' 'unlawfully, riotously, and routously did assemble and gather together to disturb the peace,' etc., proceeding to set forth the act performed." 2 Bish. Crim. Proc., sec. 992. In section 995 the same learned author, speaking of the purposes of an assemblage, says: "Though, in law, people lawfully assembled may incur the guilt of riot, still, before it can be committed, the assemblage must become unlawful—that is, the riotous purpose must be entertained. Hence the unlawfulness of the assemblage must in some manner appear in the allegation."

In Archbold's Criminal Pleading and Practice (8 ed.), volume 2, with Pomeroy's Notes, is given a precedent and form for an indictment for this offense, in which it is alleged (omitting the formal parts), "that the parties, with force and arms, to-wit, with sticks, staves, and other offensive weapons, unlawfully, riotously, routously, and tumultuously did assemble and gather together to disturb the peace, etc., and did then unlawfully, riotously, routously, and tumultuously make a great noise, riot, tumult, and disturbance, to the great terror and disturbance," etc., "and being so assembled and gathered together as aforesaid, they, the said parties (naming them), and said other evil-disposed persons aforesaid, did then unlawfully, riotously, routously, and tumultuously make an assault upon C. D., etc. (stating the act done, as the case may be), against the peace," etc. In the note to the text it is said: "The indictment must show for what purpose the rioters assembled, that the court may judge whether it was lawful or not, and it must state that the defendants unlawfully assembled; for a riot is a compound offense. There must be not only an unlawful act to be done, but an unlawful assembly of more than two persons. Reg. v. Gulston, 2 Ld. Raym., 1210; Reg. v. Soley, 2 Salk., 593, 594." See a form in Bishop's Directions and Forms, sec. 929.

It will be noticed that in the information, as set out above, it is alleged that defendant did then and there unlawfully engage in a riot with other parties named. This allegation is simply a conclusion of law, and not an allegation of fact, and does not supply the requisite allegation, that the parties unlawfuly assembled together; nor is its defect cured by the addition that defendant "engaged in the riot with the other parties named, who had assembled at the residence of Thompson." This is also a conclusion of law upon the part of the pleader.

We are of the opinion that the indictment to have been sufficient should have alleged that the defendant and others unlawfully assembled,

and after that it should have stated for what purpose they assembled, and then it should have set out the unlawful act done or attempted by the parties after the unlawful assembly together. But again, suppose the original purpose for which the parties had assembled was lawful, then article 309 of the Penal Code, which we have quoted above, furnishes the rule by which the indictment to be valid should be framed, to-wit, that "where the assemblage was at first lawful, and then the persons so assembled afterward agreed to join in the commission of an act which would amount to a riot if it had been the original purpose of the meeting, all those who do not retire when the change of purpose is known are guilty of riot."

Article 311 provides, that "the indictment or information must likewise state the illegal act which was the object of the meeting, or which they proceeded to do, if the assemblage was originally lawful." In such a case the indictment should allege, (1) the lawful assemblage; (2) the persons so assembled afterward agreed to join in the commission of an act (stating the act constituting the riot), which they proceeded to do. We are of opinion that when tested by the above and foregoing rules the information in this case is fatally defective, and does not charge the offense attempted to be charged, to-wit, a riot.

Our Assistant Attorney-General has confessed error on the part of the State upon the validity of the information, because the same was insufficient in the particulars above pointed out.

Because the information is fatally defective, the judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*

Judges all present and concurring.